## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RICARDO DUPLESSIS,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 21-CV-4377** |
| | : | |
| **BLANCHE CARNEY,** *et al.*, | : | |
| **Defendants.** | : | |

## MEMORANDUM

**KENNEY, J.**                                                    **OCTOBER 19, 2021**

Plaintiff Ricardo Duplessis, a prisoner incarcerated at the Curran-Fromhold Correctional Facility ("CFCF"), is one of several prisoners who initiated this putative class action pursuant to 42 U.S.C. § 1983, challenging the constitutionality of various conditions at CFCF.  The Complaint in this case initially proceeded before Judge Rufe in Civil Action Number 21-1435. In a September 29, 2021 Memorandum and Order, Judge Rufe:  (1) dismissed as plaintiffs those prisoners who had either failed to pay the fees or moved to proceed *in forma pauperis* after having been given an opportunity to do so; (2) concluded that the plaintiffs, who were proceeding *pro se*, could not represent a class of prisoners and that, in any event, the class claims should be dismissed without prejudice as inadequately pled; and (3) concluded that the individual claims of the three remaining plaintiffs should be severed from each other.  *See Stokes v. Carney*, Civ. A. No. 21-1435, 2021 WL 4477185, at **6-9 (E.D. Pa. Sept. 29, 2021).

In accordance with her conclusion that joinder of the individual claims was improper, Judge Rufe directed severance of Duplessis's claims (along with his payment of the applicable fees) into a new lawsuit, which was docketed as the instant civil action and assigned to the

undersigned.  *See id.* at *9 & n.5.  For the following reasons, the Court will dismiss Duplessis's claims without prejudice to him filing an amended complaint.

## I.      FACTUAL ALLEGATIONS

The Complaint in this case is partially styled as a class action based on allegations supporting class claims and the individualized declarations of six Plaintiffs, including Duplessis. (*See* ECF No. 2.)  The Complaint names the following Defendants:  (1) O. Ford; (2) C/O Antwi; (3) Blanche Carney; and (4) Capt. Harmer.  (*Id.* at 2-4.)[1]  Carney is the Commissioner of the Philadelphia Department of Prisons and the other Defendants are employed at CFCF.  (*Id.* at 3-4.)  Page six of the Complaint lists six additional Defendants:  (1) C/O M. Friend; (2) Sgt. Brown; (3) "Oliver ___ H"; (4) Lt. Reid; (5) Sgt. John Doe; and (6) C/O Felts.  (*Id.* at 6.)  The Defendants are sued in their individual and official capacities.  (*Id.*)

In his individualized declaration, Duplessis claims that on February 17, 2021, while incarcerated at CFCF as a pretrial detainee, he was "ambushed" when Correctional Officers Nunes, Corley, Randall, and Petaccio, Sgt. Cherian, and Lt. Rodriguez[2] came to his cell upon learning Duplessis's cellmate was in possession of a cell phone.  (*Id.* at 12.)  Nunes and Cherian "forcefully had [Duplessis] up against the wall" while the other officers wrestled with the cellmate over the phone.  (*Id.*)  Officers indicated that they "found [the phone] on the floor damaged under [the cellmate's] bed."  (*Id.*)  At that point, both Duplessis and his cell mate were removed from the room and strip searched by the officers.  (*Id.*)  While naked, Duplessis was ordered to "use each hand to hold a cheek and to squat and cough 3 times."  (*Id.*)  He was then ordered to "turn around, raise [his] private, and lift one leg up at a time."  (*Id.*)  Officers then

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

[2] None of these individuals are identified as Defendants in the Complaint.

searched the cell, and Officers Randall and Corley took Duplessis's commissary items worth

$238.93.  (*Id.* at 13.)

Thereafter, Duplessis claims he was placed in "arbitrary detention" by Sgt. Cherian even

though he did not receive a disciplinary hearing.  (*Id.*)  Duplessis was required to serve 30 days

in solitary confinement, followed by "administration," at which point his privileges of

commissary, phone calls, and visits would be renewed.  (*Id.*)  He states that, "[w]hile on the

arbitrary detention the conditions are horrible with limited access to linen exchange, laundry, law

library and etc.  You are in your cell 24 hrs. a day for days at a time."  (*Id.* at 13.)  Duplessis

alleges that he "notified" Commissioner Carney and Warden Gianetta "of this matter" on

February 19, 2021 by mail "with their Inmate Grievance form."  (*Id.* at 14.)

As noted above, the Complaint initially pursued class claims for relief, specifically "on

behalf of [Plaintiffs] as well as any and all other similarly situated individuals incarcerated at

CFCF and housed on A-1-3" for violation of their due process rights, excessive force, deliberate

indifference and "collusion."  (*Id.* at 4 & 6.)  They alleged that "as a result of the customs,

policies, practices and actions adopted and undertaken by" the Defendants, they were placed on a

"segregation-detention unit," *i.e.*, A-1-3, "and subjected to punitive status without receiving a

disciplinary hearing in violation of due process."  (*Id.* at 6.)  They also alleged that they were

assaulted by correctional officers before they were housed on A-1-3 and subjected to

unconstitutional conditions on the unit.  (*Id.*)  Although these claims were dismissed by Judge

Rufe to the extent they were brought on behalf of the class, *Stokes*, 2021 WL 4477185, at *8, the

Court repeats these allegations here because they provide context for Duplessis's individual

claims.

3

The Complaint seeks class certification (which has already effectively been denied by Judge Rufe), $2 million in compensatory and punitive damages "for illegal placement in solitary confinement on A-1-3 during COVID 19 pandemic with no due process hearing" and "immediate release" from A-1-3.  (*Id.* at 21.)

## II.    STANDARD OF REVIEW

Duplessis paid the fees to commence this case.  Nonetheless, § 1915A requires that the Court "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a).  In doing so, the Court must dismiss a complaint or any portion thereof that "is frivolous, malicious, or fails to state a claim upon which relief may be granted," *id.* § 1915A(b)(1), or that "seeks monetary relief from a defendant who is immune from such relief," *id.* § 1915A(b)(2).

Whether a complaint fails to state a claim under § 1915A(b)(1) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *See Neal v. Pa. Bd. of Prob. & Parole*, No. 96-7923, 1997 WL 338838, at *1 (E.D. Pa. June 19, 1997); *see also Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).  Accordingly, the Court must determine whether the Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'"  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory

allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Duplessis is proceeding *pro se*, the Court

construes his allegations liberally. *Vogt v. Wetzel*, 8 F. 4th 182, 185 (3d Cir. 2021) (citing *Mala*

*v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III.    DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by

the Constitution and laws of the United States, and must show that the alleged deprivation was

committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

For the following reasons, the Court concludes that Duplessis has failed to state a claim against

the named Defendants.

The Complaint names the Defendants, all of whom are employed at CFCF, in their

individual and official capacities. In rejecting the class claims, Judge Rufe concluded that the

Plaintiffs failed to allege a municipal policy or custom that caused the claimed constitutional

violations stemming from the Plaintiffs' placement on A.1.3 and the conditions there, and that

they similarly failed to allege a basis for Carney's liability. Judge Rufe analyzed the Complaint

as follows:

> First, the Plaintiffs appear to be asserting that Carney, in her individual and/or
> official capacity, maintained a custom of placing inmates at CFCF on A-1-3
> indefinitely without providing them a hearing. Second, Plaintiffs appear to be
> asserting that Carney, in her individual and/or official capacity, permitted the
> conditions in which they are or were confined on unit A-1-3.
>
> Official capacity claims are indistinguishable from claims against the entity that
> employs the officials, here the City of Philadelphia. *See Kentucky v. Graham*,
> 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent
> only another way of pleading an action against an entity of which an officer is an
> agent.'") (quoting *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690, n. 55
> (1978)). To maintain a claim against Carney, or any other Defendant, in their
> official capacity, Plaintiffs must plead a basis for municipal liability.
> To plead a basis for municipal liability under § 1983, a plaintiff must allege that
> the municipality's policy or custom caused the violation of his constitutional
> rights. *See Monell*, 436 U.S. at 694. "To satisfy the pleading standard, [the

5

plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). For a custom to be the proximate cause of an injury, a plaintiff must establish that the Defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [the plaintiffs'] injury." *Id.* (internal quotations and alterations omitted). In other words, "[c]ustom requires proof of knowledge and acquiescence by [a municipal] decisionmaker." *McTernan*, 564 F.3d at 658; *see also Baker v. Monroe Twp.*, 50 F.3d 1186, 1191 (3d Cir. 1995) (to establish municipal liability, the plaintiffs "must show that a policymaker for the Township authorized policies that led to the violations or permitted practices that were so permanent and well settled as to establish acquiescence").

Regarding claims for individual liability, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.*; *see also Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).

Although the Complaint generally invokes the standard for municipal liability in support of the class claims, (*see* ECF No. 4 at 6), Plaintiffs do not identify a specific policy to house inmates on the punitive detention unit indefinitely without a hearing or a specific policy pertaining to the conditions in which they were held. Rather, liberally construing their allegations, they appear to be asserting that there exists a custom of treating inmates in this manner because they were treated this way. In support, they have provided six declarations from inmates (the Plaintiffs who are proceeding and those who are not) attesting to

their placement on A-1-3 without a hearing.  Although most of the Plaintiffs claim they were not given an anticipated end date for their time on A-1-3, that was not universal — Stokes was informed he would be placed in punitive detention for fifteen days in June 2020, Duplessis was given a thirty-day sentence, and Williams was given a sixty-day sentence.  Each inmate's declaration contains similar generalized allegations about the conditions on A-1-3, *i.e.*, that the conditions on the unit are deplorable because they do not have access to a law library or sheet exchange and have been confined to their cells for 24-hour periods, sometimes for days.  Four of the declarations also generally allege that those inmates "notified" Carney of the "matter" or "matters."

The Plaintiffs' somewhat similar experiences over the course of eight months do not support the existence of a plausible municipal custom to deny hearings to inmates housed on A-1-3 at CFCF that essentially operates with the force of law because they have not adequately alleged knowledge or acquiescence attributable to the City.  Four of the Plaintiffs generally allege that they notified Carney of the matter or matters, without specifying the particular issues that they brought to her attention.  Their generalized allegations are insufficient to state a plausible basis for Carney's personal involvement in, knowledge of, or acquiescence in the constitutional violations alleged, which is fatal to their individual and official capacity claims raised on behalf of the class.  *See Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (*per curiam*) (defendants' alleged inappropriate responses to plaintiff's "later-filed grievances" were insufficient to establish those defendants' personal involvement in underlying wrongs); *Rode,* 845 F.2d at 1207 ("Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity."); *Burk v. Crowe*, Civ. A. No. 19-5792, 2020 WL 42758, at *4 (E.D. Pa. Jan. 3, 2020) (plaintiff's "general allegation that he 'wrote to' Crowe, Cassidy, Budd, and Lagana 'when this happen[ed]' is too vague and undeveloped to state a plausible basis for liability against these individuals").

The same is true of Plaintiffs' class claims based on the conditions of A-1-3.  In addition, the generalized allegations about the conditions on A-1-3 are too vague to allege a plausible underlying constitutional violation.  Plaintiffs cite the general lack of access to a law library but there are no allegations that any of the prisoners suffered an actual injury by losing their ability to pursue a nonfrivolous claim.  *See Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (explaining that the right of access to the courts, "rest[s] on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court"); *O'Connell v. Williams*, 241 F. App'x 55, 57 (3d Cir. 2007) (*per curiam*) (holding that "[t]o state a claim for denial of access to courts based on an inadequate law library, a litigant must show with specificity that he was prevented from litigating a nonfrivolous underlying claim due to the allegedly inadequate facilities, and must seek a remedy for the denial of access which would not be available in another suit").  While denial of recreation and clean facilities may rise to the level of a constitutional violation, the conditions

must be objectively serious and prison officials must have acted with deliberate indifference. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (to act with deliberate indifference, the prison official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference"); *Stevenson* [*v. Carroll*], 495 F.3d [62] at 68 [(3d Cir. 2007)] (explaining that unconstitutional punishment involves objective and subjective components; the "objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind."); *Edwards v. Northampton Cty.*, 663 F. App'x 132, 135 (3d Cir. 2016) (per curiam) ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees." (internal citations omitted)). Plaintiffs allege that they are not able to regularly exchange their sheets, some allege that they are locked in their cell for days at a time (although the frequency or duration of these periods is unclear), and some allude to inadequate mental health resources. However, Plaintiffs have offered at most only one or two sentences of undeveloped allegations about the conditions on A-1-3. They have not alleged sufficient facts about the extent, duration, and effect of those conditions from which this Court could infer that the challenged conditions were objectively serious, such that inmates housed on A-1-3 were deprived of a basic human need or that their health or safety was at risk. *See generally Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."); *Bell v. Wolfish*, 441 U.S. 520, 542 (1979) (indicating that conditions must result in "genuine privations and hardship over an extended period of time" to violate the Constitution). In other words, Plaintiffs have not only failed to allege a municipal policy or custom, but they have also failed to allege plausibly that the conditions on A-1-3 violated the Constitution.

*Stokes*, 2021 WL 4477185, at *6-8 (footnote omitted).

The Court concurs with this cogent analysis and will dismiss Duplessis's claims against the Defendants in their official capacities, as well as his claims against Carney, on that basis. Duplessis has not alleged any other basis for municipal liability or a claim against Carney.

Duplessis has also failed to state a claim against any of the other named Defendants in their individual capacities. As noted above, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *Rode*, 845 F.2d at 1207. The

remaining Defendants — O. Ford, C/O Antwi, Capt. Harmer, C/O M. Friend, Sgt. Brown, Oliver_H, Lt. Reid, Sgt. John Doe, and C/O Felts — appear to have been named solely because they were involved in alleged constitutional violations being pursued by other prisoners, rather than any actions they took with regard to Duplessis. *See Stokes*, 2021 WL 4477185, at **2-3 (describing Plaintiff Stokes and Cardona's individualized allegations).  In other words, Duplessis fails to allege that any of these Defendants were personally involved in the alleged violation of his rights or that they harmed him in any way.  Accordingly, he has not stated a claim against these Defendants.

However, Duplessis's allegations discuss the actions of other prison officials who were not named as Defendants and describes how those individuals allegedly harmed him. Accordingly, the Court will dismiss the Complaint without prejudice to Duplessis filing an amended complaint against the appropriate defendants about the conditions of his confinement he personally experienced at CFCF.  The Court expresses no opinion on the merits of any of Duplessis's claims at this time.

## IV.    CONCLUSION

For the foregoing reasons, the Court will dismiss Duplessis's claims without prejudice to him filing an amended complaint.  An appropriate Order follows, which in provides further instruction as to amendment.

**BY THE COURT:**

**/s/ Chad F. Kenney**

_____

**CHAD F. KENNEY, J.**

9