IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RICARDO DUPLESSIS,** | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | **CIVIL ACTION NO. 21-CV-4377** |
| | : | |
| **BLANCHE CARNEY,** *et al.*, | : | |
|     Defendants. | : | |

## MEMORANDUM

**KENNEY, J.**                                                                                                               **DECEMBER 6, 2021**

Currently before the Court is an Amended Complaint filed by Plaintiff Ricardo Duplessis, pursuant to 42 U.S.C. § 1983, raising claims based on events that occurred while he was a pretrial detainee incarcerated at the Curran-Fromhold Correctional Facility ("CFCF").[1] For the following reasons, the Court will permit Duplessis to proceed on his excessive force claims against six Defendants and dismiss his remaining claims for failure to state a claim.

**I.**        **FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY**

Plaintiff Ricardo Duplessis is one of several prisoners who filed the initial Complaint in this case, which was partially styled as a class action challenging the conditions at CFCF based on allegations supporting class claims and the individualized declarations of six Plaintiffs, including Duplessis. (*See* ECF No. 2.) The Complaint named the following Defendants: (1) O. Ford; (2) C/O Antwi; (3) Blanche Carney; and (4) Capt. Harmer. (*Id.* at 2-4.)[2] Carney is the Commissioner of the Philadelphia Department of Prisons and the other Defendants were

---

[1] Duplessis has since been transferred to the Philadelphia Industrial Correctional Center ("PICC").

[2] The Court adopts the pagination supplied by the CM/ECF docketing system.

employed at CFCF.  (*Id.* at 3-4.)  Page six of the Complaint listed six additional Defendants:  (1) C/O M. Friend; (2) Sgt. Brown; (3) "Oliver ___ H"; (4) Lt. Reid; (5) Sgt. John Doe; and (6) C/O Felts.  (*Id.* at 6.)  The Defendants were sued in their individual and official capacities.  (*Id.*)

In his individualized declaration, Duplessis claimed that on February 17, 2021, while incarcerated at CFCF as a pretrial detainee, he was "ambushed" when Correctional Officers Nunes, Corley, Randall, and Petaccio, Sgt. Cherian, and Lt. Rodriguez (none of whom were identified as Defendants in the Complaint) came to his cell upon learning Duplessis's cellmate was in possession of a cell phone.  (*Id.* at 12.)  Nunes and Cherian "forcefully had [Duplessis] up against the wall" while the other officers wrestled with the cellmate over the phone.  (*Id.*)  Officers indicated that they "found [the phone] on the floor damaged under [the cellmate's] bed."  (*Id.*)  At that point, both Duplessis and his cell mate were removed from the room and strip searched by the officers.  (*Id.*)  While naked, Duplessis was ordered to "use each hand to hold a cheek and to squat and cough 3 times."  (*Id.*)  He was then ordered to "turn around, raise [his] private, and lift one leg up at a time."  (*Id.*)  Officers then searched the cell, and Officers Randall and Corley took Duplessis's commissary items.  (*Id.* at 13.)

Duplessis claims he was then placed in "arbitrary detention" even though he did not receive a disciplinary hearing.  (*Id.*)  Duplessis was required to serve 30 days in solitary confinement, followed by "administration," at which point his privileges of commissary, phone calls, and visits would be renewed.  (*Id.*)  He stated that, "[w]hile on the arbitrary detention the conditions are horrible with limited access to linen exchange, laundry, law library and etc.  You are in your cell 24 hrs. a day for days at a time."  (*Id*. at 13.)  Duplessis alleged that he "notified" Commissioner Carney and Warden Gianetta "of this matter" on February 19, 2021 by mail.  (*Id.* at 14.)

As noted above, the Complaint initially pursued class claims for relief, specifically "on behalf of [Plaintiffs] as well as any and all other similarly situated individuals incarcerated at CFCF and housed on A-1-3," for violation of their due process rights, excessive force, deliberate indifference and "collusion." (*Id.* at 4 & 6.) They alleged that "as a result of the customs, policies, practices and actions adopted and undertaken by" the Defendants, they were placed on a "segregation-detention unit," *i.e.*, A-1-3, "and subjected to punitive status without receiving a disciplinary hearing in violation of due process." (*Id.* at 6.) They also alleged that they were assaulted by correctional officers before they were housed on A-1-3 and subjected to unconstitutional conditions on the unit. (*Id.*)

The Complaint in this case initially proceeded before Judge Rufe in Civil Action Number 21-1435. In a September 29, 2021 Memorandum and Order, Judge Rufe screened the Complaint pursuant to 28 U.S.C. § 1915A and: (1) dismissed as plaintiffs those prisoners who had either failed to pay the fees or moved to proceed *in forma pauperis* after having been given an opportunity to do so; (2) concluded that the plaintiffs, who were proceeding *pro se*, could not represent a class of prisoners and that, in any event, the class claims should be dismissed without prejudice as inadequately pled; and (3) concluded that the individual claims of the three remaining plaintiffs should be severed from each other. *See Stokes v. Carney*, Civ. A. No. 21-1435, 2021 WL 4477185, at **6-9 (E.D. Pa. Sept. 29, 2021). In accordance with her conclusion that joinder of the individual claims was improper, Judge Rufe directed severance of Duplessis's claims (along with his payment of the applicable fees) into a new lawsuit, which was docketed as the instant civil action and assigned to the undersigned. *See id.* at *9 & n.5.

In an October 19, 2021 Memorandum, the Court screened Duplessis's individual claims and dismissed them pursuant to § 1915A. *Duplessis v. Carney*, Civ. A. No. 21-4377, 2021 WL

4860746, at *1 (E.D. Pa. Oct. 19, 2021). Certain of those claims overlapped with the class claims Judge Rufe dismissed, specifically, claims against Defendant Carney and claims against the Defendants in their official capacities based on Duplessis's placement on the detention unit and the conditions there. The Court adopted Judge Rufe's analysis as to these claims, concluding that the Complaint failed to plead a municipal policy or custom sufficient to maintain claims against the Defendants in their official capacities (which were essentially claims against the City) and similarly failed to state a basis for Carney's liability as a policymaker or otherwise. *Id.* at *3-5. The Court then dismissed the remainder of Duplessis's claims because "[t]he remaining Defendants — O. Ford, C/O Antwi, Capt. Harmer, C/O M. Friend, Sgt. Brown, Oliver_H, Lt. Reid, Sgt. John Doe, and C/O Felts — appear to have been named solely because they were involved in alleged constitutional violations being pursued by other prisoners, rather than any actions they took with regard to Duplessis." *Id.* at *5. However, since Duplessis discussed the actions of other prison officials, the Court permitted him to file an amended complaint "against the appropriate defendants about the conditions . . . he personally experienced at CFCF." *Id.* The Court's Order directly instructed Duplessis to identify the Defendants he sought to sue and to "state the basis for [his] claims against each defendant," while keeping in mind the reasons the Court dismissed his claims as initially pled. (ECF No. 6 (emphasis omitted).)

      Duplessis returned with an Amended Complaint naming the following Defendants: (1) the City of Philadelphia; (2) Officer Nunes; (3) C.O. Randall; (4) Sgt. Cherian; (5) Correctional Officer Corley; (6) Correctional Officer Petaccio; (7) Lieutenant Rodriguez; and (8)

Commissioner Carney.³  (ECF No. 7 at 1-3 & 8.)  The Defendants are sued in their individual and official capacities.  (*Id.* at 3.)

Duplessis alleges that he was "ambushed" when Officers Nunes, Corley, Randall, Petaccio, Sgt. Cherian, and Lt. Rodriguez entered his cell on February 17, 2021 after receiving a tip that his cell mate was in possession of a cell phone.⁴  (*Id.* at 5.)  Duplessis alleges that he was only in the cell for two days and was not in possession of any contraband.  Regardless, Defendants Nunes and Cherian forcefully grabbed him, pushed him up against a wall, and walked him over to a supply cabinet where they ordered him to strip.  (*Id.*)  When Duplessis questioned the order, Cherian punched him in the face and again directed Duplessis to strip.  (*Id.*)  Cherian again punched Duplessis in the face, "beat him off camera," and repeated the order to strip.  (*Id.*)  Duplessis contends that Defendants Nunes, Randall, Petaccio, Corley, and Rodriguez also participated in the beating and maced him at one point.  (*Id.* at 6.; *see also id.* at 7 (Officers Randall, Corley, and Petaccio also participated "to assault [him]"); *id.* at 9 ("I was beaten by 4 correctional officers . . . .").)

It appears that, at this point, Duplessis complied with the order.  As he was stripping, Defendants Cherian and Nunes required him to bend over and "open his butt cheeks" so they could look inside his anus with a flashlight.  (*Id.* at 5.)  Duplessis indicates that he was thereafter

---

³ Most of the Defendants are identified in the body of the Amended Complaint.  Although it would have been preferable if Duplessis had identified all of these Defendants in the caption, his Amended Complaint is clear that he intends to include them all as parties, so the Court will treat them as such.

⁴ It appears Lt. Rodriguez may have obtained the tip and directed action on it.  (*See* ECF No. 7 at 8 (alleging that Rodriguez "is in charge of making sure the duties from the Captain gets accomplished in which herein he obtained the contraband from an alleged tip on [Duplessis's] cell mate").)

5

placed in the RHU, which he claims was "illegal and unlawful" because he was not in possession of any contraband. (*Id.* at 6.) He also alleges that, since his transfer to PICC, where he is currently incarcerated, he has been retaliated against, placed in the RHU without proper process, and subjected to unconstitutional conditions. (*Id.* at 6.)

Duplessis indicates that he is bringing constitutional claims for "lack of outta cell time, lack of disciplinary hearings, and excessive force by correctional officers."[5] (*Id.* at 3.) Duplessis alleges that the City of Philadelphia "has customs, rules, and regulations that allows the Philadelphia department of Prisons and all it's [sic] employees to use excessive force to keep inmates locked in cells for days, weeks, and even a month at a time." (*Id.* at 7.) He adds that the City is "aware" of the "unconstitutional events" but has not "stepped up to address the issues." (*Id.*) Duplessis also alleges that Carney is responsible for the safety of all inmates, including himself, and that she "has failed her duty" by "allowing her employees to beat and keep [Duplessis] locked in his cell for weeks and months at a time with no time out and by allowing her officers to assault [him]." (*Id.* at 8.) Duplessis seeks monetary damages. (*Id.* at 9.)

## II.     STANDARD OF REVIEW

Section 1915A requires that the Court "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In doing so, the Court must dismiss a complaint or any portion thereof that

---

[5] In the portion of the form complaint used to describe injuries, Duplessis indicates that he was "denied medical attention" after he was maced and that his "body was burning for 6 days due to not being taken to medical for decontamination." (ECF No. 7 at 9.) It is not clear whether Duplessis intends to bring a separate claim challenging the lack of medical care. If he did intend to bring such a claim, he has not sufficiently tied this allegation to the Defendants in a manner sufficient to allege their personal involvement.

"is frivolous, malicious, or fails to state a claim upon which relief may be granted," *id.* § 1915A(b)(1), or that "seeks monetary relief from a defendant who is immune from such relief," *id.* § 1915A(b)(2).

Whether a complaint fails to state a claim under § 1915A(b)(1) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Neal v. Pa. Bd. of Prob. & Parole*, No. 96-7923, 1997 WL 338838, at *1 (E.D. Pa. June 19, 1997); *see also Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). Accordingly, the Court must determine whether the Amended Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Duplessis is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F. 4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

### III.   DISCUSSION

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be individually liable for a constitutional violation. *See Rode v. Dellarciprete*, 845 F.2d 1195,

1207 (3d Cir. 1988). For the following reasons, the Court concludes that Duplessis has pled sufficient factual matter to proceed on his excessive force claims against Nunes, Corley, Randall, Petaccio, Cherian and Rodriguez. However, the Court will dismiss Duplessis's remaining claims for failure to state a claim.

### A. Claims Against the City of Philadelphia and Official Capacity Claims

Official capacity claims are indistinguishable from claims against the entity that employs the officials. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690, n. 55 (1978)). Thus, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* Since Duplessis's official capacity claims against employees and officials of the City of Philadelphia are essentially the same as his claims against the City of Philadelphia, the Court will analyze these claims together according to the standards for pleading a municipal liability claim.

To plead a basis for municipal liability under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights. *See Monell*, 436 U.S. at 694. "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-

settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).  For a custom to be the proximate cause of an injury, a plaintiff must allege that the Defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [the plaintiff's] injury." *Id.* (internal quotations and alterations omitted).

A plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019).  "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.*

Duplessis has not sufficiently alleged a municipal policy or custom that would support a plausible claim against the City of Philadelphia or the Defendants in their official capacities.  Instead, he alleges in a general manner that the City "has customs, rules and regulations that allow[]" its employees to commit numerous constitutional violations, and that the City is "aware" of the "unconstitutional events."  (ECF No. 7 at 7.)  These allegations, which simply paraphrase the standard for municipal liability, are too vague and generalized to support a claim against the City.  *See, e.g.*, *Szerensci v. Shimshock*, Civ. A. No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under *Monell*.") (citing cases).  Accordingly, the Court will dismiss these claims because they are not plausible as alleged.

### B. Claims Against Commissioner Carney

Duplessis's claims against Commissioner Carney appear to be predicated on a theory of supervisory liability. There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.*; *see also Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).

Duplessis alleges that Commissioner Carney has failed her duty to him and other inmates because she allows her employees to commit constitutional violations. (ECF No. 7 at 8.) This generalized allegation does not sufficiently support an inference that Carney was aware of or acquiesced in constitutional violations committed by her subordinates or that she maintained policies that caused the claimed constitutional violations. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of

10

his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)). Accordingly, the Court will dismiss Duplessis's claims against Defendant Carney.

### C.  Claims Against Nunes, Corley, Randall, Petaccio, Cherian and Rodriguez

The Court understands Duplessis to be raising claims against Defendants Nunes, Corley, Randall, Petaccio, Cherian and Rodriguez for excessive force, for subjecting him to a strip search, and for placing him in the RHU in connection with the events of February 17, 2021 at CFCF. The Court addresses these allegations in turn.

#### 1. Excessive Force

Since Duplessis was a pretrial detainee at the time of the incident, the Due Process Clause of the Fourteenth Amendment governs his excessive force claims. *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). To state a due process violation based on excessive force, a detainee must allege facts to suggest plausibly that "that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015). "Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* at 397. This list is not exclusive. *Id.*

Here, Duplessis alleges that Cherian punched him in the face twice during the events of February 17, 2021. These allegations state a plausible claim against Cherian for excessive force under the circumstances. Duplessis also alleges that Cherian and Nunes beat him off camera, apparently when he initially refused to comply with an order to strip. Duplessis's allegations

against the additional Defendants are somewhat vaguer but indicate that they all participated in the beating that took place on that date. At this early stage of the litigation, Duplessis has alleged sufficient factual matter about the use of force on this date for his Amended Complaint to be served for a responsive pleading.[6]

### 2. Strip Search

Duplessis also challenges the strip search to which he was subjected on February 17, 2021, apparently on the basis that the Defendants lacked a reasonable basis to search him because he had only been in the cell for two days and was not in possession of contraband. In *Florence v. Board of Chosen Freeholders of the County of Burlington,* 566 U.S. 318, 223-339 (2012) the United States Supreme Court held that the Fourth Amendment to the United States Constitution does not bar correctional officers from conducting strip searches of detainees who will be admitted to a jail's general population. The Court found constitutional a prison policy of strip searching every inmate entering the general population, "regardless of the circumstances of the arrest, the suspected offense, or the detainee's behavior, demeanor, or criminal history." *Id.*, 566 U.S. at 333-34. The Supreme Court found that this policy was reasonably related to the legitimate and substantial security interest of the correctional facility in preventing inmates from putting their own or others' lives at risk, either from disease, gang affiliation, or contraband. 566 U.S. at 333; *see also id.* at 328 ("[C]orrectional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities."). The strip searches considered appropriate by the *Florence* Court included "close visual inspections while undressed," "directing detainees to shake their heads or to run their hands through their hair to

---

[6] Duplessis will ultimately be required to establish each Defendant's specific, personal involvement in the use of force on the date in question. *See Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 292-93 (3d Cir. 2018).

dislodge what might be hidden there . . . instructions to raise arms, to display foot insteps, to expose the back of the ears, to move or spread the buttocks or genital areas, or to cough in a squatting position." *Id.*, 566 U.S. at 324.

On an individual level, "[t]he Supreme Court has held that visual body cavity searches may be conducted by prison officials without probable cause," provided they are "conducted in a reasonable manner." *Brown v. Blaine*, 185 F. App'x 166, 169 (3d Cir. 2006) (*per curiam*) (citing *Bell v. Wolfish*, 441 U.S. 520, 559-60 (1979); *see also Millhouse v. Arbasak*, 373 F. App'x 135, 137 (3d Cir. 2010) (*per curiam*) ("Assuming the truth of Millhouse's allegations, the searches, even if embarrassing and humiliating, do not violate the constitution."). In assessing the reasonableness of a search, courts should "consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Bell*, 441 U.S. at 559; *Ibrahim v. DeFilippo*, Civ. A. No. 19-5021, 2021 WL 753898, at *12 (D.N.J. Feb. 26, 2021) ("In determining whether a particular strip search policy or action is reasonable, courts must balance an inmate's constitutional right to privacy and the needs of the institution to maintain safety and security."). Concerns about inmate possession of contraband are among the reasons that justify the use of strip searches in the prison context. *Bell*, 441 U.S. at 559. However, if a strip search is excessive, vindictive, or harassing, it may violate the Fourth Amendment. *See Pelino v. Gilmore*, Civ. A. No., 2020 WL 9264961, at *5 (W.D. Pa. Dec. 18, 2020), *report and recommendation adopted*, 2021 WL 1037612 (W.D. Pa. Mar. 18, 2021) (quoting *Vo v. Gilmore*, Civ. A. No. 18-1364, 2019 WL 1507842, at *2 (W.D. Pa. Feb. 26, 2019)); *see also Parkell v. Danberg*, 833 F.3d 313, 328-29 (3d Cir. 2016).

Here, Duplessis alleges that the strip search to which he was subjected occurred at a time when the Defendants arrived at his cell because they received a tip that contraband was present

in the cell. Although Duplessis indicates that his cellmate was responsible for the contraband, it is apparent that the Defendants were dealing with a situation in which contraband was suspected and found in a cell in which Duplessis was present.[7] These circumstances provide a reasonable explanation why Duplessis was subjected to a strip search, *i.e.*, concerns about contraband. Although Duplessis was made to strip and spread his butt cheeks, he does not allege that the Defendants touched him inappropriately in connection with the strip search, nor does he allege any other facts to suggest that the search was conducted in an unreasonable manner. In sum, the Amended Complaint, as pled, does not allege sufficient facts to support a plausible Fourth Amendment violation based on the strip search.

### 3. RHU

Duplessis indicates that he was sent to the RHU and suggests that his placement there violated various constitutional rights. It also appears he may be challenging the conditions in the RHU. However, Duplessis does not tie these allegations to any of the Defendants. In other words, he has failed to allege how Defendants Nunes, Corley, Randall, Petaccio, Cherian and Rodriguez were responsible for his placement in the RHU, for any defects in the process he received, or for any conditions there so as to state a basis for their personal involvement in the relevant events. Accordingly, the Court will dismiss Duplessis's claims based on his placement in the RHU at CFCF and any other claims related to the RHU at CFCF.

Furthermore, the Amended Complaint focuses more on Duplessis's placement in the RHU at PICC and the conditions there. None of these allegations are attributable to any of these Defendants, who are employed at CFCF. Accordingly, the Court will also dismiss any claims

---

[7] According to the initial Complaint, the contraband, a cell phone, was either retrieved from Duplessis's cellmate or found under the cellmate's bed. (ECF No. 2 at 12.)

based on the conditions at PICC. If Duplessis intends to pursue any such claims, he must file them in a separate lawsuit.[8]

## IV.     CONCLUSION

For the foregoing reasons, the Court will dismiss Duplessis's claims with the exception of his excessive force claims against Defendants Nunes, Corley, Randall, Petaccio, Cherian and Rodriguez in their individual capacities based on the events of February 17, 2021 at CFCF. Duplessis will not be given another opportunity to amend at this time. An appropriate Order follows, which directs service of Duplessis's remaining claims.

**BY THE COURT:**

**/s/ Chad F. Kenney**

**CHAD F. KENNEY, J.**

---

[8] Should Duplessis file a second lawsuit, he will be obligated to pay the fees for that lawsuit or, if he cannot afford to do so, to seek leave to proceed *in forma pauperis*. *See* 28 U.S.C. §§ 1914 & 1915.